UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

| | |
|---|---|
| CTR SEARCH PARTNERS LLC,<br><br>              *Plaintiff,*<br><br>      v.<br><br>INTEGRIS EXECUTIVE SEARCH, LLC, RM NEPHEW & ASSOCIATES, LLC, ROBERT M. NEPHEW, MARGARET SHUE, CHRISTINA DARIENZO, and DENISE AMARI,<br><br>              *Defendants.* | Civ. No. 1:25-cv-11723 |

**DEFENDANT RM NEPHEW & ASSOCIATES, LLC'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS**

Defendant RM Nephew & Associates, LLC ("RMN") files this Memorandum of Law in Support of its Motion to Dismiss CTR Search Partners, LLC's ("CTR") Second Amended Complaint (ECF #34) pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, because it fails to state any claims against RMN upon which relief can be granted.

**INTRODUCTION**

The Second Amended Complaint against RMN suffers from the same fatal flaw as the Original Complaint: CTR has not alleged a single fact of wrongdoing by RMN. CTR did not add any new allegations to the Second Amended Complaint regarding RMN as compared with the Original Complaint (ECF #1, the "Original Complaint"), which RMN previously moved to dismiss for failure to state a claim. (ECF #13.) The Second Amended Complaint includes allegations

1

regarding conduct by Robert M. Nephew.[1] However, CTR neither distinguishes nor identifies any way in which it contends Mr. Nephew acted on behalf of RMN for purposes of imposing liability on RMN.

## RELEVANT BACKGROUND

**A.   Factual Allegations**

Until 2021, Mr. Nephew operated RMN, an executive search firm. (ECF #34, Second Amended Complaint ¶¶ 1, 19 ("2d Am. Compl.").) In May 2021, pursuant to the terms of an Asset Purchase Agreement, CTR purchased all of the assets of RMN for an amount CTR alleges totaled $975,000. (*Id.*)

Also in May 2021, CTR hired Mr. Nephew as an employee pursuant to an Employment Agreement. (2d Am. Compl. ¶¶ 21, 23.) CTR contends that Mr. Nephew remained employed by CTR until his retirement, at which time his employment with CTR ended. (2d Am. Compl. ¶¶ 2, 42.)

Mr. Nephew also entered into a Noncompetition Agreement with CTR. (2d Am. Compl. ¶ 21.) The Noncompetition Agreement included restrictive covenants applicable to him "[d]uring [his] employment with [CTR] and for one year thereafter." (2d Am. Compl. ¶ 26.)

**B.   Procedural History**

CTR initiated this lawsuit on June 12, 2025, against RMN, Mr. Nephew, three former RMN employees, and Integris Executive Search, LLC, an entity CTR asserts is a "competing business" (collectively, the "Defendants"). (Original Complaint ¶ 2.)

---

[1] Contemporaneously with the filing of RMN's Motion to Dismiss, Mr. Nephew also moved to dismiss the claims against him for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of the Civil Procedure.

On August 26, 2025, RMN moved to dismiss the Original Complaint for failure to state a claim (the "Original Motion to Dismiss"). The Original Motion to Dismiss was premised on the fact that CTR did not make a single factual allegation specifically about RMN. (ECF #14, Memorandum in Support of Original Motion to Dismiss p.1.) The only mention of RMN at all in the Facts section of the Original Complaint, in the context of wrongful acts forming the basis of CTR's claims, is one conclusory statement on page 14, paragraph 76, blaming "Integris, RMN, or some combination thereof" for CTR's business losses. (Original Complaint ¶ 76.) The remainder of the Original Complaint otherwise describes acts purportedly taken by Mr. Nephew and the other Defendants, in violation of their alleged duties and obligations owed to CTR. (Memorandum in Support of Original Motion to Dismiss p.2-3.)

In response to the Original Motion to Dismiss, CTR amended its Complaint. (ECF #27.) Therefore, the Court denied the Original Motion to Dismiss as moot. (ECF #28.)

The parties subsequently stayed the litigation to mediate and attempt to resolve the dispute. (ECF #29.) After unsuccessful settlement discussions, CTR sought leave to again amend its complaint (ECF #32), which the Court granted. (ECF #33.) CTR subsequently filed the Second Amended Complaint (ECF #34), which is the subject of this motion.

A careful review of the Second Amended Complaint demonstrates that CTR added allegations about each of the Defendants except RMN. In its Second Amended Complaint, not only did CTR not add any new allegations about RMN, it removed the only allegation regarding wrongful conduct purportedly engaged in by RMN and it now blames "Integris, *Nephew*, or some combination thereof" for CTR's losses. (2d Am. Compl. ¶ 126) (emphasis added.)

In the Second Amended Complaint, CTR also discarded one of its claims against RMN. The remaining causes of action asserted against RMN now appear in Count VII (tortious

interference with advantageous business relations – against all Defendants), Count X (unjust enrichment – against only RMN), and Count XII (civil conspiracy – against all Defendants).

In support of its tortious interference with advantageous business relations claim, CTR alleges conclusively in the Second Amended Complaint that "Defendants knowingly and intentionally induced and procured the impairment of the contractual and advantageous business relationships between CTR, on the one hand, and Bruker [Corporation] and [The] Kraft [Group] on the other hand." (*Id.* at ¶ 166.) The Second Amended Complaint, however, does not include any factual allegations regarding the role RMN played in inducing and/or procuring the impairment of CTR's contractual business relationships.

The unjust enrichment claim relates to the consideration CTR paid for RMN's assets. (*See* 2d Am. Compl. ¶¶ 184-188.) CTR alleges that the consideration reflected "the value of the book of business, customer relationships, and goodwill that [Mr.] Nephew had developed over several decades." (*Id.* at ¶ 1.) Examples of customer relationships referenced by CTR include Bruker Corporation ("Bruker"), from which CTR asserts it "realized over $300,000 in revenue between 2023 and 2024 . . . " (*Id.* at ¶ 94.) and The Kraft Group ("Kraft"), through which relationship CTR purportedly "realized over $750,000 in revenue…between 2022 and 2024." (*Id.* at ¶ 101.) Despite admitting to over $1,050,000 in revenue from those two customers alone, CTR asserts, again in conclusory fashion without factual support, that "it would be inequitable for RMN to retain the consideration paid by CTR for RMN's book of business and other assets." (*Id.* at ¶ 188.)

Finally, in support of its civil conspiracy claim, CTR states once again conclusively that "Integris, [Margaret] Shue, [Christina] Darienzo, and [Denise] Amari, on the one hand, and RMN and Nephew, on the other hand, acted tortiously in concert with the other to misappropriate CTR's

250699309v4

goodwill and tortiously interfere with its advantageous and contractual relationships." (*Id.* at 195.) However, it, too, does not assert any unlawful acts by RMN.

## ARGUMENT AND AUTHORITIES

A.  **Legal Standard**

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must allege facts sufficient to state a claim for relief that is "plausible on its face" and actionable as a matter of law. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

Reading the complaint as a whole, the Court must conduct a two-step, context-specific inquiry. *García-Catalán v. United States*, 734 F.3d 100, 103 (1st Cir. 2013). First, the Court must perform a close reading of the complaint to distinguish factual allegations from conclusory legal statements. *Id.* Factual allegations must be accepted as true, while legal conclusions are not entitled to credit. *Id.* Importantly, the Court is not required to accept all factual allegations in the complaint and can exempt "those facts which have since been conclusively contradicted by plaintiffs' concessions or otherwise." *Riccio v. Ford Motor Credit Co.*, 238 F.R.D. 44, 47 (D. Mass. 2006). Second, the Court must determine whether the factual allegations present a "reasonable inference that the defendant is liable for the misconduct alleged." *Haley v. City of Boston*, 657 F.3d 39, 46 (1st Cir. 2011).

Ultimately, CTR is "obliged to set forth in [its] complaint 'factual allegations, either direct or inferential, regarding each material element necessary to sustain recovery under some actionable legal theory.'" *See Platten v. HG Bermuda Exempted Ltd.*, 437 F.3d 118, 127 (1st Cir. 2006) (*quoting Gooley v. Mobil Oil Corp.*, 851 F.2d 513, 514 (1st Cir. 1988). Dismissal is appropriate

250699309v4

when the complaint fails to allege a "plausible entitlement to relief." *Rodriguez-Ortiz v. Margo Caribe, Inc.*, 490 F.3d 92, 95 (1st Cir. 2007) (*quoting Twombly*, 550 U.S. at 559).

**B.     CTR has Failed to State A Claim Against RMN.**

   i.   <u>Tortious Interference with Advantageous Business Relations (Count VII – against all Defendants).</u>

To state a claim for tortious interference with advantageous business relations against RMN, CTR must allege that: (1) CTR was involved in a business relationship or anticipated involvement in one, (2) RMN knew about the relationship, (3) RMN intentionally interfered with the relationship for an improper purpose or by an improper means, and (4) CTR suffered damages as a result. *Int'l Floors Crafts, Inc. v. Adams*, 477 F. Supp. 2d 336, 339 (D. Mass. 2007). Here, CTR does not allege any facts in the Second Amended Complaint to plausibly allege RMN knew about the relationships at issue and intentionally interfered with such relationships for an improper purpose or by an improper means. In fact, CTR does not even state that RMN acted *through Mr. Nephew* or another principal, officer, or agent, to do so.[2] And had CTR so pled without more, such a statement would have been nothing more than a conclusory allegation, insufficient to save the claim from dismissal. *See, e.g., Platten*, 437 F.3d at 130 (holding that an allegation that the corporate entity acted "by and through" its individual principal, based on nothing more than conclusory allegations regarding the individual's principal's control of the entities, failed to state a claim of intentional interference with contractual relations).

---

[2] A corporate entity can only act through its agents. *Sunrise Props. v. Bacon, Wilson, Ratner, Cohen, Salvage, Fialky & Fitzgerald, P.C.*, 425 Mass 63, 66, 679 N.E.2d 540, 543 (1997)

For these reasons, CTR has failed to allege a plausible entitlement to relief against RMN for tortious interference with advantageous business relations. Therefore, Count VII against RMN should be dismissed.

ii. <u>Unjust Enrichment (Count X – Against RMN only)</u>.

Unjust enrichment is the retention of money or property of another against the fundamental principles of justice or equity and good conscience. *Columbia Plaza Assocs. v. Northeastern Univ.*, 493 Mass. 570, 589, 277 N.E.3d 999 (2024). The elements of an unjust-enrichment claim are: "(1) a benefit conferred on the defendant by the plaintiff; (2) an appreciation or knowledge by the defendant of the benefit; and (3) acceptance or retention by the defendant of the benefit under the circumstances would be inequitable without payment of its value." *Id.* The unjust enrichment claim fails because CTR has not alleged facts sufficient to plausibly demonstrate that RMN's retention of the purchase price would be inequitable.

*Shaulis v. Nordstrom, Inc.* is instructive on this point. 120 F. Supp. 3d 40, 55 (D. Mass. 2015). In *Shaulis*, the plaintiff alleged that Nordstrom misrepresented the value of the price discounts offered on certain products. *Id.* at 43-44. The plaintiff contended that she purchased certain items because she was enticed by the idea of paying less than the price for which Nordstrom advertised the products would normally be sold. *Id.* at 43. The plaintiff alleged that Nordstrom was unjustly enriched by obtaining revenues and profits that it would not otherwise have obtained absent its false, misleading, and deceptive conduct. *Id.* at 55. However, the plaintiff admitted that she paid the purchase price for the product; she did not allege that she did not receive the product she purchased or that she paid more than the product was worth. *Id.* at 55. Therefore, the court held that the plaintiff did not allege that Nordstrom "received a benefit that would be inequitable without payment for its value" and dismissed the unjust enrichment claim.

The same is true here. CTR states, without factual support, that it was "deprived of the benefit of its bargain with RMN" (2d Am. Compl. ¶ 187), and that "it would be inequitable for RMN to retain the consideration paid by CTR for RMN's book of business." (2d Am. Compl. ¶ 188.) However, CTR admits that earned revenue from at least two of RMN's customer relationships it acquired in connection with the purchase of RMN's assets, and that such revenue exceeded $1,050,000. (2d Am. Compl. ¶¶ 94, 101.) Thus, CTR does not, and cannot allege, that it did not it did not receive RMN's customer relationships and business goodwill for which it paid. *See Shaulis*, 120 F. Supp. 3d at 55. Nor does CTR allege that it paid more than those relationships were worth. *See id.* CTR's conclusory allegations are not enough to state a claim for unjust enrichment. Moreover, that just two customers of the entire "book of business" CTR purportedly purchased from RMN resulted in significant revenue for CTR by themselves conclusively contradicts CTR's unjust enrichment claim.

Therefore, the Court should dismiss Count X of the Second Amended Complaint alleging unjust enrichment.

   iii. <u>Civil Conspiracy (Count XII – against all Defendants).</u>

"Massachusetts recognizes two types of civil conspiracy, so-called 'true conspiracy' and conspiracy based on section 876 of the Restatement (Second) of Torts." *Taylor v. Am. Chemistry Council*, 576 F.3d 16, 34 (1st Cir. 2009). "The 'true conspiracy' is a very limited cause of action that requires an element of coercion." *Blake v. Pro. Coin Grading Serv.*, 898 F. Supp. 2d 365, 391 (D. Mass. 2012). CTR makes no such allegation in the Second Amended Complaint. Instead, CTR appears to assert a civil conspiracy claim based on Section 876 of the Restatement. For this civil conspiracy claim to be viable, "the [plaintiff] must show an underlying tortious act in which two

or more persons acted in concert and in furtherance of a common design or agreement." *Blake*, 898 F. Supp. 2d at 392 (citations omitted).

CTR's civil conspiracy claim against RMN should be dismissed because CTR's allegations are conclusory in nature without factual support. Specifically, CTR alleges "Integris, [Ms.] Shue, [Ms.] Darienzo, and [Ms.] Amari, on the one hand, and RMN and Nephew, on the other hand, acted tortiously in concert to misappropriate CTR's goodwill and tortiously interfere with its advantageous and contractual relationships." (2d Am. Compl. ¶ 195.) However, "allegations that merely parrot the elements of the cause of action" are insufficient to survive a motion to dismiss. *See Courtemanche v. Motorola Solutions, Inc.*, 774 F. Supp. 3d 289, 317 (D. Mass. 2025) (*quoting Ocasio-Hernandez v. Fortuno Burset*, 640 F.3d 1, 12 (1st Cir. 2011)).

Further, as discussed above, none of factual allegations regarding Defendants' wrongful acts include a single act by RMN that would support CTR's claim that it acted tortiously "to misappropriate CTR's goodwill and tortiously interfere with its advantageous and contractual relationships." CTR states that both Mr. Nephew and RMN acted tortiously but fails to distinguish between Mr. Nephew's actions in his individual capacity and those acts CTR contends he took on behalf of RMN. Thus, the Second Amended Complaint is devoid of factual allegations regarding RMN's involvement in the alleged conspiracy and Count XII should be dismissed as it relates to RMN.

## CONCLUSION

WHEREFORE, RM Nephew & Associates, LLC requests that (a) the Court grant its Motion to Dismiss each of the claims against it in Plaintiff's Second Amended Complaint for failure to state a claim upon which relief can be granted, and (b) for such other just and equitable relief to which the Court deems it is entitled.

250699309v4

Dated: January 16, 2026

                        Respectfully submitted,

                        **RM NEPHEW & ASSOCIATES, LLC**

                        By its attorneys

                        /s/ Richard D. Glovsky
                        Richard D. Glovsky (BBO # 195820)
                        Troutman Pepper Locke LLP
                        111 Huntington Avenue
                        Boston, MA  02199
                        617-239-0100
                        richard.glovsky@troutman.com

                        Akilah F. Craig (admitted *pro hac vice*)
                        TX State Bar No. 24076194
                        Troutman Pepper Locke LLP
                        600 Travis Street, Suite 2800
                        Houston, Texas 77002
                        713-226-1200
                        akilah.craig@troutman.com