**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| **CTR SEARCH PARTNERS LLC,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**INTEGRIS EXECUTIVE SEARCH, LLC, et al.,**<br><br>**Defendants.** | **Civil Action No. 25-11723-BEM** |

**MEMORANDUM AND ORDER ON**
**PLAINTIFF AND DEFENDANT-IN-COUNTERCLAIM'S MOTION TO DISMISS**

**MURPHY, J.**

This dispute arises out of the sale of RM & Associates, LLC to CTR Search Partners LLC ("CTR") and the subsequent founding of Integris Executive Search, LLC.[1] Before the Court now are four counterclaims by Defendant and Plaintiff-in-Counterclaim, Robert M. Nephew, against his former employer, Plaintiff and Defendant-in-Counterclaim, CTR. Nephew raises claims of conversion, fraudulent inducement, unfair and deceptive acts in violation of Mass. Gen. Laws ch. 93A § 11, and promissory estoppel. While a more detailed elucidation of this Court's reasoning follows, it is worth noting at the outset that this decision was not a close call. Going forward, more meticulous review of legal claims prior to their assertion would undoubtably foster timely resolution of this matter. For the reasons set forth below, the Court will grant CTR's motion to dismiss.

[1] The Court's June 2, 2026 memorandum and order provides a more fulsome account of the dispute thus far. *See generally CTR Search Partners LLC v. Integris Exec. Search, LLC*, --- F. Supp. 3d ---, 2026 WL 2474629 (D. Mass. June 2, 2026).

# I. **Background**

## A. **Factual Background**

The Court draws the following facts from Nephew's counterclaims, Dkt. 74 at 56–64 ("Counterclaims" or "Countercl."), and accepts them as true for purposes of the instant motion.[2]

In May 2021, CTR purchased substantially all of the assets of RM & Associates, LLC, an executive search firm founded by Nephew. *Id.* ¶ 9. In connection with that sale, Nephew and CTR entered into an employment agreement on May 1, 2021. Dkt. 34-1 (the "Employment Agreement" or "Agreement"). Pursuant to the Employment Agreement, Nephew was obligated to work for CTR for 18 months, beginning on May 1, 2021. Countercl. ¶ 6. As part of his employment with CTR, Nephew "received a company-issued iPhone, laptop, and email address." *Id.* ¶ 8. Though Nephew "primarily" used the devices and email account for business reasons, he was permitted "to store significant personal information on the laptop." *Id.* This data included medical information, financial and legal information, and documents and communications related to personal and family matters. *Id.*

Nephew retired from CTR on October 31, 2022, in accordance with the Employment Agreement. *Id.* ¶ 12. He alleges that he and CTR did not renew the Employment Agreement or enter into an independent contractor relationship following the Agreement's expiration. *Id.* ¶ 13. Following his retirement, Nephew "repeatedly" asked Luke Tierney, CTR's president, to remove Nephew's profile from the website. *Id.* ¶¶ 10, 15. Tierney and CTR "disregarded Nephew's

---

[2] The Court will disregard any contradictions between the facts alleged in Nephew's counterclaims and the facts alleged in CTR's complaint. However, where Nephew admits to CTR's allegations in his answer, the Court will consider those admissions alongside the counterclaims. *Romero Reyes v. Marine Enters., Inc.*, 494 F.2d 866, 868 (1st Cir. 1974) ("That which a defendant admits in his answer is binding upon him." (quoting *Freedom Nat. Bank v. Northern Ill. Corp.*, 202 F. 2d 601, 605 (7th Cir. 1953))). When referring to facts alleged in Nephew's counterclaims, the Court references the paragraph numbers beginning on page 56 of Nephew's amended answer and counterclaims. Countercl. at 56–64. When referring to the Nephew's amended answer, the Court will reference the paragraphs beginning on page 1 and ending on page 54. Dkt. 74 at 1–54 ("Answer" or "Ans.").

request" and his profile remained on the website "for several months." *Id.* ¶ 15. Additionally, "following Nephew's retirement," Tierney told Nephew that he could retain his company-issued electronic devices. *Id.* ¶ 16. Tierney represented to Nephew that if "CTR ever intended to request the return of the devices or stop Nephew's access to the email account, CTR would provide advance notice to Nephew and allow him to remove his personal information." *Id.* Nephew continued to use the devices "for almost [15] months from his retirement."[3] *Id.* ¶ 19.

In April 2025, CTR accused Nephew of violating his Employment Agreement by retaining the devices and then cut off access to his email account. *Id.* ¶ 20. After making "copies of the data on the devices . . . in order not to lose his personal data," Dkt. 81 at 2 n.1, Nephew later returned the devices as requested by CTR, *id.* ¶ 21.

### B. <u>Procedural Background</u>

This Court summarized much of the relevant procedural background in its June 2, 2026 memorandum and order. *See* Dkt. 68 at 6–7. Following the Court's order, Nephew filed an answer with counterclaims on June 16, 2026. *See generally* Dkt. 70. Nephew amended his answer and counterclaims on June 23, 2026. *See generally* Dkt. 74.[4] In his Answer, Nephew raises four counterclaims against CTR: conversion (Count I), *id.* ¶¶ 22–25; fraudulent inducement (Count II), *id.* ¶¶ 26–30; unfair and deceptive trade practices in violation of Mass. Gen. Laws ch. 93A, § 11 ("Chapter 93A") (Count III), *id.* ¶¶ 31–36; and promissory estoppel (Count IV), *id.* ¶¶ 37–41. CTR moved to dismiss on July 14, 2026. Dkts. 76–77.

---

[3] The fifteen-month time frame alleged by Nephew does not align with the thirty months between his alleged retirement in October 2022 and CTR's demand for the return of the devices in April 2025. *Id.* ¶¶ 19–20.

[4] Integris Executive Search, LLC, Denise Amari, Christina Darienzo, and Madeline Shue (collectively, the "Integris Defendants") filed an answer and along with a counterclaim by Denise Amari on June 16, 2026. Dkt. 69. Amari also filed a third-party complaint against CTR and Tierney on July 1, 2026. Dkt. 75. CTR filed an answer to Amari's counterclaim and third-party complaint on July 22, 2026. Dkt. 79.

## II. Legal Standard

Courts analyzing counterclaims under Federal Rule of Civil Procedure 12(b)(6) apply the same standard "as was previously applied in ruling on the motions to dismiss the complaint." *Gouin v. Gouin*, 249 F. Supp. 2d 62, 67 (D. Mass. 2003). Under that standard, the Court must determine whether the factual allegations—disregarding all "conclusory" statements—"state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In making its determination, a court must "accept the truth of all well-pleaded facts and draw all reasonable inferences therefrom in the pleader's favor." *Grajales v. P.R. Ports Auth.*, 682 F.3d 40, 44 (1st Cir. 2012). At the pleading stage, a counterclaim plaintiff need not demonstrate that he is likely to prevail, but the "claim must suggest 'more than a sheer possibility that a defendant has acted unlawfully.'" *García-Catalán v. United States*, 734 F.3d 100, 102–03 (1st Cir. 2013) (quoting *Iqbal*, 556 U.S. at 678). "The inquiry is usually limited to the facts alleged in the complaint, incorporated into the complaint, or susceptible to judicial notice," *Whelden v. U.S. Bank Nat'l Ass'n*, 494 F. Supp. 3d 68, 73 (D. Mass. 2020) (citing *In re Colonial Mortg. Bankers Corp.*, 324 F.3d 12, 15 (1st Cir. 2003)), "but the court may also consider other documents the authenticity of which is not disputed by the parties, documents central to the plaintiff's claim, and documents sufficiently referred to in the complaint," *id.* (citing *Watterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993)).

## III. Discussion

### A. Count I: Conversion

Nephew alleges CTR "intentionally and unjustifiably" converted his personal data and documents on CTR-issued devices "without authorization." Countercl. ¶ 24; *see also id.* ¶¶ 22–23, 25. This claim is dangerously close to frivolous. Simply put, to convert something is to take another's property. Nephew admitted that "*all of the data* on the device, is the property of CTR."

Ans. ¶ 190. While this admission is plainly sufficient to allow CTR's motion to dismiss, a more detailed analysis follows.

A claim of conversion has four elements under Massachusetts law: "(1) the defendant intentionally and wrongfully exercised control or dominion over the personal property; (2) the plaintiff had an ownership or possessory interest in the property at the time of the alleged conversion; (3) the plaintiff was damaged by the defendant's conduct; and (4) if the defendant legitimately acquired possession of the property under a good-faith claim of right, the plaintiff's demand for its return was refused." *Unum Grp. v. Loftus*, 220 F. Supp. 3d 143, 148 (D. Mass. 2016) (quoting *United States v. Peabody Const. Co.*, 392 F. Supp. 2d 36, 37 (D. Mass. 2005)). CTR argues that Nephew fails to allege that CTR "lacked a legal right to possess the data," fails to claim that "CTR intentionally and wrongfully asserted dominion or control over it," and that Nephew "fails to plead damages." Dkt. 77 at 5; *see also id.* at 6–7.

The Court agrees that Nephew fails to allege a plausible claim for conversion. As to the first element, the laptop and iPhone at issue are, by Nephew's own admission, CTR's property. Countercl. ¶¶ 8, 16 (referring to the iPhone, laptop, and email account as "company-issued"); *see also id.* ¶ 27 ("[Nephew] would be notified in advance if CTR required the return of *its* devices." (emphasis added)). Nephew also admits the data on the iPhone were also CTR's property. Ans. ¶ 190 (admitting that "*all of the data* on the device, is the property of CTR" (emphasis added)). All told, Nephew has not plausibly alleged that the devices at issue, including the data on the devices, were not CTR's to control. CTR's request for the devices and data can therefore not be considered "wrongful." *See e.g. Jayson Assocs., Inc. v. United Parcel Serv. Co.*, 2004 WL 1576725, at *2 (D. Mass. July 15, 2004) ("Defendant cannot convert what plaintiff does not own.").

As to damages, Nephew admits he retains access to the very same personal data he claims was converted. Nephew affirms that he made "copies of the data on the devices before returning them, in order not to lose his personal data." Dkt. 81 at 2 n.1. Nephew's own decision to "refrain[] from accessing the data" has no bearing on whether he *can* access the data.[5] *Id.* Because Nephew retains access to the personal data, he has not alleged any harm from its purported conversion.

Finally, even assuming Nephew *did* have a joint property interest in the personal data, he does not allege that he demanded the return of the data after CTR's alleged conversion. "[I]n cases where 'the defendant's possession is not wrongful in its inception,' the plaintiff must show demand and refusal." *Fiorillo v. Winiker*, 85 F. Supp. 3d 565, 575 n.5 (D. Mass. 2015) (quoting *Atl. Fin. Corp. v. Galvam*, 311 Mass. 49, 50–51 (1942)). As mentioned above, CTR's repossession of its devices and data were not, as alleged, wrongful. Nephew must therefore show demand and refusal—but his allegations indicate the opposite. It was CTR that demanded *Nephew* return the laptop and iPhone, a request to which Nephew acquiesced. Ans. ¶ 129 ("Nephew admits that he returned the delivered laptop to CTR on or about May 21, 2025 . . . and asserts that after negotiations and discussions between counsel for Nephew and CTR, he returned the iPhone on or about June 18, 2025."). There are no facts alleged indicating that Nephew demanded the return of his personal data from CTR or that CTR refused.

Accordingly, CTR's motion to dismiss as to Nephew's conversion counterclaim is granted and Count I is dismissed.

---

[5] Nephew asserts that, while he did make copies of the data from the devices, he has "refrained from accessing that data pending the parties' agreement on an appropriate protocol for the retrieval of his personal information and thus he continues to not have access to his personal information." Dkt. 81 at 2 n.1.

**B. <u>Count II: Fraudulent Inducement</u>**

Nephew alleges that Tierney, on behalf of CTR, fraudulently induced Nephew into "unknowingly continu[ing] to work with CTR" by promising Nephew that he could continue to use his company-issued devices and email account post-retirement. Countercl. ¶ 27, *see also id.* ¶¶ 26, 28–30. CTR argues that Nephew fails to meet the heightened pleading standards for fraud claims and that Nephew fails to allege either a material misrepresentation or detrimental reliance. Dkt. 77 at 7–11.

To plead fraudulent inducement, a plaintiff must plausibly allege (1) that the defendant made a false representation of material fact, (2) with knowledge of its falsity, (3) with the purpose of inducing the plaintiff to act thereon, and (4) that the plaintiff relied upon the representation to its detriment. *See Valley Eye Physicians & Surgeons P.C. v. Modernizing Med. Billing Servs., LLC*, 2025 WL 2022021, at *2 (D. Mass. Jul. 18, 2025) (citing *Griffin v. Coghill*, 2018 WL 1122361, at *7 (D. Mass. Mar. 1, 2018)). Additionally, Federal Rule of Civil Procedure 9(b) ("Rule 9(b)") requires fraud claims "be alleged with particularity." *Rodi v. S. New Eng. Sch. of L.*, 389 F.3d 5, 15 (1st Cir. 2004). Particularity is a heightened pleading standard requiring the plaintiff to provide, with specificity, the "who, what, where, and when of the allegedly false or fraudulent representation." *Alt. Sys. Concepts, Inc. v. Synopsys, Inc.*, 374 F.3d 23, 29 (1st Cir. 2004). In addition to mandating that a plaintiff allege particular facts, Rule 9(b) also requires "identifying the basis for inferring scienter." *N. Am. Catholic Educ. Programming Found., Inc. v. Cardinale*, 567 F.3d 8, 13 (1st Cir. 2009).

To start, Nephew has not met the heightened pleading standards under Rule 9(b). First, by his own admission, he fails to plead a location of the alleged material misstatement. Dkt. 81 at 6 n.3 ("Nephew acknowledges that the counterclaim does not specify the *location* at which [Tierney's] representations were made."). But he also fails to allege "when" Tierney made the

alleged misrepresentation. Instead of giving a particular date, Nephew merely gestures at an undefined time "[f]ollowing [his] retirement." Countercl. ¶ 16. This vague allegation is compounded by Nephew's failure to specify the method by which Tierney made the alleged misrepresentation, be it in writing or orally. *Silveus v. City of Brockton*, 2022 WL 21769754, at *2, *5 (D. Mass. Sept. 13, 2022) (dismissing fraud claim where plaintiff failed to "spell out . . . the specifics of any claim" including what defendants "are alleged to have said, or written, or done").

Additionally, Nephew argues in opposition, that "whether [Tierney] knew his promise was false when he made it is precisely the type of question discovery is designed to answer." Dkt. 81 at 6. That understates Nephew's heightened burden when pleading a fraud claim. Rule 9(b) requires Nephew to "set[] forth specific facts that make it reasonable to believe that defendant knew that a statement was materially false or misleading." *Greenstone v. Cambex Corp.*, 975 F.2d 22, 25 (1st Cir. 1992) (Breyer, J.). Here, Nephew merely speculates that "CTR knew this representation … was false." Countercl. ¶ 28. "[C]ourts have uniformly held inadequate a complaint's general averment of the defendant's 'knowledge' of material falsity." *Greenstone*, 975 F.2d at 25. Nephew provides no additional facts supporting his own "general averment" that Tierney knowingly made a false statement on CTR's behalf.

Because Nephew fails to plead a when, a where, a how, or a reasonable basis for inferring scienter, he has not met the heightened pleading standards under Rule 9(b). CTR's motion to dismiss as to Count II is granted.[6]

---

[6] Even if Nephew had alleged a "when" and "where," along with a sufficient basis for inferring scienter, his claim for fraudulent inducement would still fail to plausibly allege the requisite detrimental reliance. CTR's promise to allow Nephew to continue to use his company-issued devices was allegedly made "to induce Nephew unknowingly to continue to work with CTR when requested after he retired." Countercl. ¶ 28. If CTR's promise induced Nephew to "unknowingly" perform work, then, definitionally, Nephew cannot have *knowingly* relied upon the alleged misstatement. Moreover, Nephew did not change his behavior after CTR's promise. He was using the devices before CTR's alleged promise and he continued to use them afterwards. *See e.g.*, *Leavitt v. United Servs. Auto. Ass'n*, 2024

### C. Count III: Unfair and Deceptive Trade Practices

Nephew alleges CTR committed unfair and deceptive trade practices in violation of Chapter 93A by permitting Nephew to continue to use the company-issued devices and also by keeping his profile on CTR's website after his retirement despite his requests for its removal. Countercl. ¶¶ 31–36. CTR argues that neither action constitutes an unfair or deceptive trade practice. Dkt. 77 at 11–13.

Under Chapter 93A, an unfair or deceptive practice is "best discerned from the circumstances." *Cynosure, LLC v. Reveal Lasers LLC*, 793 F. Supp. 3d 315, 347 (D. Mass. 2025) (quoting *Anoush Cab, Inc. v. Uber Techs., Inc.*, 8 F.4th 1, 17 (1st Cir. 2021)). Unfair practices and deceptive practices are distinct under Massachusetts law. *See Schuster v. Wynn Ma, LLC*, 118 F.4th 30, 39–44 (1st Cir. 2024) (analyzing alleged unfair practices and deceptive practices separately). To determine if a practice is unfair, the Court considers "whether the conduct: (1) 'is within at least the penumbra of some common-law, statutory, or other established concept of unfairness'; (2) 'is immoral, unethical, oppressive, or unscrupulous'; and (3) 'causes substantial injury to consumers or other businesses.'" *Id.* at 39 (quoting *Columbia Plaza Assocs.*, 493 Mass. at 587). Put another way, the alleged conduct must rise "to the level of an 'extreme or egregious' business wrong, 'commercial extortion,' or similar level of 'rascality' that raises 'an eyebrow of someone inured to the rough and tumble of the world of commerce.'" *Peabody Essex Museum, Inc. v. U.S. Fire Ins. Co.*, 802 F.3d 39, 54 (1st Cir. 2015) (quoting *Baker v. Goldman, Sachs & Co.*, 771 F.3d 37, 51 (1st Cir. 2014)). To determine if a practice is deceptive, the Court must consider "'if it possesses a tendency to deceive' and 'if it could reasonably be found to have caused

WL 218504, at *7 (D. Mass. Jan. 19, 2024) (dismissing fraud claim where plaintiff "fail[ed] to allege that [he] or anyone else actually *relied* upon a purported misrepresentation" (emphasis in original)); *see also Yaghoobi v. Tufts Med. Ctr., Inc.*, 762 F. Supp. 3d 85, 95 (D. Mass. 2025).

a person to act differently from the way he [or she] otherwise would have acted.'" *Walsh v. TelTech Sys., Inc.*, 821 F.3d 155, 160 (1st Cir. 2016) (alteration in original) (quoting *Aspinall v. Philip Morris Cos., Inc.*, 442 Mass. 381, 394 (2004)).

At least part of Nephew's claim under Chapter 93A is derived from his fraudulent inducement claim. *See* Countercl. ¶ 33 ("CTR engaged in unfair or deceptive practices . . . including . . . permitting Nephew to continue to use his company-issued phone, laptop, and email account."). "The SJC has clearly articulated the standard that if a Chapter 93A claim is 'derivative of' other claims which fail as a matter of law, the Chapter 93A claim 'must also fail.'" *Gattineri v. Wynn MA, LLC*, 93 F.4th 505, 511 (1st Cir. 2024) (quoting *Park Drive Towing, Inc. v. City of Revere*, 442 Mass. 80, 85–86 (2004)); *see also McCabe v. Ford Motor Co.*, 774 F. Supp. 3d 349, 399 (D. Mass. 2025) ("Where a 93A claim is 'based on the same economic theory of injury and the same alleged set of facts' as another, such that they are 'factually and legally intertwined,' the claims 'should survive or fail under the same analysis.'" (quoting *Iannachino v. Ford Motor Co.*, 451 Mass. 623, 634–35 (2008)). Accordingly, Nephew's 93A claim fails as it relates to CTR's alleged inducement.

Nephew also fails to allege an unfair or deceptive practice as it relates to CTR keeping his name on the company website. Nephew alleges CTR ignored his repeated requests "to remove his profile from CTR's website." Countercl. ¶ 15. CTR did so, Nephew claims, "to deliberately creat[e] a trail of evidence to falsely suggest Nephew was a CTR employee after he retired." *Id.* ¶ 33. By keeping his name on the website "for several months," *id.* ¶ 15, Nephew argues CTR achieved a "commercial benefit" and can now use that planted evidence "to extend his noncompetition obligations," Dkt. 81 at 8. The Court disagrees. Failure to maintain an up to date

website does not amount to an unfair or deceptive practice.[7] Even assuming the out of date website induced potential CTR clients, "unaware of Nephew's retirement," to contact Nephew or CTR, Nephew does not plausibly explain how this conduct could have caused any harm to Nephew.[8] Countercl. ¶ 16. On its own, retaining Nephew's profile on the CTR website after his retirement cannot plausibly constitute "extreme or egregious conduct" where it was not "a constituent of a larger course of unfair or deceptive conduct." *See Conway v. Licata*, 2015 WL 5120977, at *13 (D. Mass. Sept. 1, 2015). Therefore, CTR's motion to dismiss as to Count III is granted.

**D. Count IV: Promissory Estoppel**

Finally, Nephew alleges that he detrimentally relied upon CTR's promise to notify him in advance if CTR required return of its devices. Countercl. ¶¶ 38–39. Nephew argues that CTR's alleged failure to abide by that promise constitutes a claim for promissory estoppel. *Id.* ¶¶ 37–41. CTR argues that Nephew fails to allege an unambiguous promise, that the alleged promise conflicts with the parties' actual contractual obligations, and that Nephew again fails to allege detrimental reliance. Dkt. 77 at 13–16.

To plausibly allege a claim of promissory estoppel under Massachusetts law, Nephew must allege "(1) a representation intended to induce reliance on the part of a person to whom the representation is made; (2) an act or omission by that person in reasonable reliance on the representation; and (3) detriment as a consequence of the act or omission." *Wilson v. HSBC Mortg.*

[7] If Nephew were correct, a bumper crop of companies could be haled into court for Chapter 93A violations for merely failing to keep their website up to date.

[8] Nephew does allege that his continued profile on the website will now be "weaponized" to extend his non-competition obligations—presumably by CTR in this litigation. Dkt. 81 at 8. But CTR does not base its allegations that Nephew was still an employee beyond October 2022 on Nephew's mere presence on the website. *See generally* Dkt. 34 ¶¶ 31–44.

*Servs., Inc.*, 744 F.3d 1, 14 (1st Cir. 2014) (quoting *Sullivan v. Chief Just. for Admin. & Mgmt. of Trial Ct.*, 448 Mass. 15, 27–28 (2006)).

The Court need not address CTR's argument that the alleged promise was unambiguous because Nephew does not plausibly allege detrimental reliance.[9] As noted earlier, Nephew made "copies of the data on the devices before returning them, in order not to lose his personal data." Dkt. 81 at 2 n.1. This is precisely the situation envisioned by the alleged promise: Nephew would be "notified in advance if CTR required the return of its devices, so that Nephew could remove his personal documents and communications." Countercl. ¶ 27. As alleged, Nephew did just that. Seeing no cognizable detriment resulting from the alleged promise, CTR's motion to dismiss is granted as to Count IV.

## IV. <u>Conclusion</u>

For the foregoing reasons, CTR's motion to dismiss is GRANTED. Nephew's counterclaims are dismissed.

**So Ordered.**

<u>/s/ Brian E. Murphy</u>
Brian E. Murphy
Judge, United States District Court

Dated: August 31, 2026

[9] CTR also argues that the alleged promise to provide Nephew with advance notice of any request to return company property contradicts the written terms of the Employment Agreement. Dkt. 77 at 15. But, taking Nephew's allegations as true, his employment with CTR ceased in October 2022. Countercl. ¶ 12. The Employment Agreement between Nephew and CTR would therefore have expired and had no binding effect at the time of the alleged promise. *Id.* ¶ 13.